UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In the Matter of the Petition of<br>ROBERT CARTER, JR., as owner<br>of the INDIGO SKY, for Exoneration<br>from and Limitation of Liability.<br>-------------------------------------------------- | :<br>:<br>:<br>:<br>: |
| ROBERT CARTER, JR.,<br><br>            Petitioner,<br><br>v.<br><br>ALLSTATE INSURANCE CO.,<br>CONTINENTAL CASUALTY CO.,<br><br>            Claimants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:     No. 3:09cv2057 (MRK) |

## RULING AND ORDER

This case arises from an August 14, 2009 fire at the Yankee Boat Yard and Marina ("Yankee Boat Yard") in Portland, Connecticut. The fire destroyed Petitioner Robert Carter, Jr.'s motorboat, the Indigo Sky, and damaged other boats and property stored on land at the Yankee Boat Yard. The Indigo Sky may have been the source of the fire. Pursuant to the Exoneration and Limitation of Liability Act ("Limitation Act"), 46 U.S.C. § 30501 *et seq.*, Mr. Carter petitions this Court to limit his potential liability for the damage caused by the fire. *See id.* § 30505(a).

Pending before the Court are Claimant Allstate Insurance Co.'s ("Allstate's") Motion to Dismiss for Lack of Subject Matter Jurisdiction [doc. # 20] and Claimant Continental Casualty Co.'s ("Continental's") Motion to Dismiss Because of Lack of Admiralty Jurisdiction [doc. # 21], both pursuant to Rule 12(b)(1) of the *Federal Rules of Civil Procedure*. The central question presented by the two motions is whether the Limitation Act confers admiralty jurisdiction over

1

petitions that arise from incidents that occurred entirely on land. For the reasons set forth below, the Court concludes that the Limitation Act does not confer admiralty jurisdiction over petitions that arise from incidents that occurred entirely on land, and the two pending motions to dismiss are therefore GRANTED.

# I.

The following undisputed facts are taken from Mr. Carter's Complaint [doc. # 1]. As it must, the Court draws all reasonable inferences from the Complaint in Mr. Carter's favor. *See Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008). Mr. Carter owed the Indigo Sky, a 36-foot Albin Trawler Motor Yacht manufactured in 1987. On August 14, 2009, the Indigo Sky had been in storage at the Yankee Boat Yard on the shores of the Connecticut River for ten months. On that day, a fire consumed the Indigo Sky and damaged other property stored on land at the Yankee Boat Yard. On August 19, 2009, a marine surveyor inspected the Indigo Sky and determined that its post-fire value was $0.00. The remains of Indigo Sky were crushed and thrown into a dumpster.[1]

On October 28, 2009, Mr. Carter received notice of a claim for damages filed against him by Allstate as the insurer of Sandra Brunelle. Ms. Brunelle was the owner of another boat destroyed by the fire. After Mr. Carter received notice of Allstate's claim, he filed his Complaint seeking limitation of liability in this Court on December 17, 2009. Allstate filed an Answer [doc. # 7] and a Counterclaim [doc. # 8] against Mr. Carter on April 1, 2010. Continental filed an Answer [doc. # 19] and a Counterclaim [doc. # 18] against Mr. Carter on May 14, 2010. Allstate

---

[1] Under the Limitation Act, a vessel owner's liability for certain claims is limited to the amount of his interest in the vessel and any pending freight. *See* 46 U.S.C. § 30505(a). Mr. Carter insists that the relevant value of the Indigo Sky for purposes of the Limitation Act is $0.00 – that is, the value of the boat *after* the fire occurred rather than *before* it occurred. *See* Compl. [doc. # 1] at 2. Because the Court dismisses this case at the outset for lack of subject-matter jurisdiction, the Court need not address that argument.

and Continental both argued in their Answers that this Court lacked subject-matter jurisdiction over Mr. Carter's action because the fire occurred entirely on land.

Allstate filed its Motion to Dismiss for Lack of Subject Matter Jurisdiction [doc. # 20] on May 17, 2010. Continental filed its Motion to Dismiss Because of Lack of Admiralty Jurisdiction [doc. # 21] on May 19, 2010. Rule 12(b) requires that a motion to dismiss be filed *before* an answer, and the two motions are thus untimely. However, lack of subject-matter jurisdiction cannot be waived by the parties, *see* Fed. R. Civ. P. 12(h)(1), and this Court has not only the authority, but also a duty to dismiss an action *at any time* if it determines that it lacks subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). The Court therefore has an obligation to consider the arguments set forth in the motions even though they are untimely. Since the motions raise colorable arguments that the Court lacked subject-matter jurisdiction, the Court has stayed all discovery in this action pending its decision on the motions. *See* Order [doc. # 32].

**II.**

The scope of this Court's review on a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) is not quite as narrow as the scope of its review on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). Mr. Carter has the burden of affirmatively showing that the Court has jurisdiction over the action. *See Morrison v. National Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). That showing may not be made solely by implication. *See id.* If necessary, the Court may consider evidence outside the pleadings to determine whether or not it has subject-matter jurisdiction over the case. *See id.*

**III.**

Mr. Carter asserts that this Court has admiralty jurisdiction over this case.[2] The

---

[2] Mr. Carter does not argue that this Court has federal question jurisdiction, *see* 28 U.S.C. § 1331, and the Court therefore does not consider that possibility. The Court notes that a number

3

Constitution extends federal judicial power "to all Cases of admiralty and maritime jurisdiction." U.S. Const. Art. III § 2. "The primary purpose of federal admiralty jurisdiction is to 'protect [] commercial shipping' with 'uniform rules of conduct.'" *Vasquez v. GMD Shipyard Corp.*, 582 F.3d 293, 298 (2d Cir. 2009) (citations omitted).

While the Constitution sets the limits of federal admiralty jurisdiction, lower federal courts must look to specific statutes enacted by Congress to determine the extent of their subject-matter jurisdiction. *See Kline v. Burke Const. Co.*, 260 U.S. 226, 234 (1922) ("Only the jurisdiction of the Supreme Court is derived directly from the Constitution. Every other court created by the general government derives its jurisdiction wholly from the authority of Congress. That body may give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution."). Mr. Carter asserts two distinct statutory bases for jurisdiction here. First, Mr. Carter argues that the Court has jurisdiction under the two-prong test for 28 U.S.C. § 1333(1) jurisdiction over maritime tort claims. *See Sisson v. Ruby*, 497 U.S. 358, 363 (1990). Second, Mr. Carter argues that the Liability Act independently confers jurisdiction even when the district court does not have jurisdiction based on the two-part test for maritime tort claims. For the reasons set forth below, the Court disagrees with both of Mr. Carter's arguments.

**A.**

The Court does not have admiralty jurisdiction over this case based on the two-prong test

---

of other courts have rejected the argument that district courts have federal question jurisdiction over petitions filed under the Limitation Act. *See, e.g.*, *Seven Resorts, Inc. v. Cantlen*, 57 F.3d 771, 773 (9th Cir. 1995) ("In this case, Seven Resorts' assertion of the Act is clearly in the nature of a defense and, as such, cannot create federal question jurisdiction."); *Three Buoys Houseboat Vacations U.S.A. Ltd. v. Morts*, 921 F.2d 775, 779-80 (8th Cir. 1990) ("Federal question jurisdiction is not created by the existence of the Act. The Act is really in the nature of a defense, it did not create Appellees' causes of action for personal injury and wrongful death against Appellant. The laws of Missouri are the source of those causes of action . . . .").

4

for 28 U.S.C. § 1333(1) jurisdiction over maritime tort claims. *See id*. Before 1972, the Supreme Court consistently held that "[e]very species of tort, however occurring, and whether on board a vessel or not, *if upon the high seas or navigable waters*, is of admiralty cognizance." *The Plymouth*, 70 U.S. (3 Wall.) 20, 36 (1866) (emphasis added). In 1972, the Supreme Court narrowed its interpretation of the scope of admiralty jurisdiction over maritime tort claims by holding that a tort is not an maritime tort unless it bears "a significant relationship to traditional maritime activity." *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 268 (1972). In *Sisson*, the Supreme Court clarified that to fall within the federal courts' admiralty jurisdiction, a tort must have *both* occurred on navigable waters *and* borne a significant relationship to traditional maritime activity. *See* 497 U.S. at 362. The Second Circuit has applied the two-prong test for § 1333(1) jurisdiction over maritime tort claims in numerous recent cases. *See, e.g.*, *Vasquez*, 582 F.3d at 298-99; *LeBlanc v. Cleveland*, 198 F.3d 353, 356-57 (2d Cir. 1999); *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108-09 (2d Cir. 1997).

In this case, the first prong of the test cannot be satisfied. It is apparent from Mr. Carter's Complaint, as well as from Allstate's and Continental's filings, that the fire at issue in this case began on land and occurred *solely* on land. *See Transatlantic Marine*, 109 F.3d at 109. The case does *not* involve a tort that occurred on navigable waters and merely had *effects* on land. *See, e.g.*, *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). Furthermore, while it is true that under Supreme Court precedent vessels remain "in navigable waters" when they are in a graving dock, *see Vasquez*, 582 F.3d at 298-99 (citing *The Robert W. Parson*, 191 U.S. 17, 33-34 (1903)), this case involves storage of a vessel on land for a period of

ten months, not temporary storage of a vessel in a graving dock.[3] The distinction may seem arbitrary, but there must be some line where navigable waters end and the land begins. It is thus unnecessary for the Court to consider Mr. Carter's argument that the activities at issue – the storage and repair of pleasure boats – bore a significant relationship to traditional maritime activity.

Most of the cases Mr. Carter cites in opposition to the pending motions are not at all to the contrary. Mr. Carter relies on numerous decisions interpreting the phrase "vessel in navigation" in litigation under the Jones Act, 46 U.S.C. § 688. *See Chandris, Inc. v. Latsis*, 515 U.S. 347, 349-50 (1995); *Roper v. United States*, 368 U.S. 20, 20-21 (1961); *McKinley v. All Alaskan Seafoods, Inc.*, 980 F.2d 567, 568 (9th Cir. 1992); *Wixom v. Boland Marine & Mfg. Co.*, 614 F.2d 956, 957 (5th Cir. Mar. 1981); *Drake v. E.I. DuPont deNemours & Co.*, 432 F.2d 276, 277-78 (5th Cir. 1970). There is, however, no reason why this Court must give the phrase "on navigable waters" when used in determining jurisdiction over maritime tort claims the same meaning that other courts have given the phrase "in navigation" when used in determining liability under the Jones Act.

Mr. Carter cites only one case that is actually to the contrary. *American Eastern Development Corp. v. Everglades Marina*, 608 F.2d 123 (5th Cir. 1979), involved a marina fire that, like the fire at issue in this case, occurred entirely on land. *See id.* at 124-25. Despite the fact that the fire occurred on land, the Fifth Circuit held that the tort "arose in admiralty" and that "the boats [although stored on land] were not withdrawn from navigation." *Id.* at 124. This Court does not find the *American Eastern Development* court's reasoning persuasive. As the

---

[3] A graving dock is a particular kind of dry dock that is "dug into the land" and in which "[t]he vessel floats in but rests on land once the water has been pumped out." *Vasquez*, 582 F.3d at 298 (quoting *Avondale v. Marine Ways v. Henderson*, 346 U.S. 366, 367 (1953) (Burton, J., concurring)).

Eleventh Circuit has also noted, *see Lewis Charters, Inc. v. Huckins Yacht Corp.*, 871 F.2d 1046, 1053-54 (11th Cir. 1989), the *American Eastern Development* court's reasoning is not consistent with more recent decisions that strictly apply the locality prong of the admiralty jurisdiction test – including more recent decisions by the Fifth Circuit. *See Guillory v. Outboard Motor Corp.*, 956 F.2d 114, 114 (5th Cir. 1993) (per curiam). Furthermore, even assuming for the sake of argument that the *American Eastern Development* court's reasoning was sound, the case is also distinguishable on its facts. That case involved boats that were taken "out of the water almost weekly, launched and removed . . . by forklift." 608 F.2d at 124. Here, Mr. Carter's boat had been in storage on land for ten months at the time of the fire. The *American Eastern Development* court itself explicitly distinguished cases involving "boats . . . stored for the winter or laid up for long periods," *id.*, indicating that even in that court's view, such cases would not fall within the federal courts' admiralty jurisdiction over maritime tort claims.

**B.**

The Court further concludes that the Limitation Act does not independently confer admiralty jurisdiction over Mr. Carter's petition, based as it is on an incident that occurred *entirely* on land. Essentially, Mr. Carter asks the Court to hold that if a vessel owner has filed a petition in a district court in conformance with the Limitation Act, there is no need for any further inquiry regarding subject-matter jurisdiction. Under *Richardson v. Harmon*, 222 U.S. 96, 101 (1911), and *The No. 6*, 241 F. 69, 71 (2d Cir. 1917), it is undeniable that the Limitation Act confers admiralty jurisdiction independent of 28 U.S.C. § 1333(1) in *some* circumstances.[4] Mr.

---

[4] The Supreme Court has signaled in recent years that it may be willing to reconsider its decision in *Richardson*. The Admiralty Extension Act of 1948 ("Extension Act"), Pub. L. No. 80-695, 62 Stat. 496 (1948) (codified as amended at 46 U.S.C. § 30101(a)), undercut the rationale for the *Richardson* decision. The Court has decided two admiralty jurisdiction cases involving petitions under the Limitation Act since Congress enacted the Extension Act. *See James B. Grubart*, 513 U.S. at 527*; Sisson*, 497 U.S. at 358. The Supreme Court did not cite *Richardson* in either

7

Carter has not explicitly relied on either of those cases in opposition to the pending motions, but this Court is bound to follow Supreme Court and Second Circuit decisions, and the Court therefore must consider whether *Richardson* and *The No. 6* are controlling here.[5] The Court concludes that *Richardson* and *The No. 6* are not controlling because neither the Supreme Court nor the Second Circuit specifically considered whether the Limitation Act confers jurisdiction over a petition seeking limitation of liability based on an incident that occurred *entirely* on land.

1.

Congress passed "[a]n Act to limit the Liability of Ship-Owners, and for other purposes" on March 2, 1851. 9 Stat. 635 (1851) (codified as amended at 46 U.S.C. §§ 30501 *et seq.*). The Limitation Act shields ship owners from some forms of civil liability in order to encourage investment in maritime commerce. *See* Amie L. Medley, Note, *A Sea of Confusion: The Shipowners' Limitation of Liability Act as an Independent Basis for Admiralty Jurisdiction*, 108 Mich. L. Rev. 229, 234 (2009). In its current form, the Limitation Act provides that "the liability of the owner of a vessel for any claim, debt, or liability . . . shall not exceed the value of the vessel and pending freight." 46 U.S.C. § 30505(a). It further provides that "claims, debts, and liabilities subject to limitation . . . are those arising from any embezzlement, loss, or destruction

---

decision. Instead, the Court straightforwardly applied the two-prong test for admiralty jurisdiction under § 1333(1), and in both cases determined that the test was satisfied because the underlying incident occurred on navigable waters and was sufficiently connected to traditional maritime activities. *See James B. Grubart*, 513 U.S. at 534, 538; *Sisson*, 497 U.S. at 367. However, because neither *James B. Grubart* nor *Sisson* explicitly overruled *Richardson*, this Court must presume that *Richardson* remains good law.

[5] In recent years, numerous courts and commentators have expressed their views regarding the scope of the Supreme Court's holding in *Richardson*. *Compare Seven Resorts*, 57 F.3d at 774 (reasoning that *Richardson* stands only for the proposition that "the jurisdiction conferred by the [Limitation] Act [is] coextensive with that of modern admiralty and maritime jurisdiction"); *with In re Bernstein*, 81 F. Supp. 2d 176, 180-82 (D. Mass. 1999) (reasoning that *Richardson* stands for the broader proposition that the Limitation Act confers jurisdiction over *all* petitions for limitation of liability); *and* Medley, *A Sea of Confusion*, 108 Mich. L. Rev. at 239-42 (same).

8

of any property, goods, or merchandise shipped or put on board the vessel, any loss damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner." *Id.* § 30505(b).

As originally enacted, the Limitation Act did not specify any procedures for its enforcement. It simply provided that any party could "take 'the appropriate proceedings in any court.'" *Norwich Co. v. Wright*, 80 U.S. 104, 123 (1871). It was thus not clear whether a vessel owner should wait and assert the Limitation Act as a defense in state court, or whether a vessel owner could go first to federal court herself. *See* Medley, *A Sea of Confusion*, 108 Mich. L. Rev. at 237. Starting in 1871, the Supreme Court began to craft its own rules and regulations for enforcement of the Limitation Act. *See Norwich*, 80 U.S. at 124. Those enforcement procedures have since been codified by Congress in the Limitation Act, *see* 46 U.S.C. § 30511(a) ("The owner of a vessel may bring a civil action in a district court of the United States for limitation of liability under this chapter. The action must be brought within 6 months after a claimant gives the owner written notice of a claim."), and the Supplemental Rules for Certain Admiralty and Maritime Claims of the *Federal Rules of Civil Procedure*. *See* Fed. R. Civ. P. Supp. F.

The enforcement procedures the Supreme Court itself created – and that Congress only later codified – allowed a vessel owner to file a petition in federal district court and thereby put an end to any pending state-court proceeding against him. *See* 46 U.S.C. § 30511(c). The Supreme Court's decision in *Norwich* hinted that federal district courts' jurisdiction over such petitions was coextensive with the district courts' existing admiralty and maritime jurisdiction. *See* 80 U.S. at 123 ("Unless, therefore, the District Courts themselves can administer the law, we are reduced to the dilemma of inferring that the legislature has passed a law which is incapable of execution. This is never to be done if it can be avoided. We have no doubt that the District Courts, as courts of admiralty and maritime jurisdiction, have jurisdiction of the matter . . . .").

The Supreme Court went on to hold in *Ex parte Phenix Ins. Co.*, 118 U.S. 610 (1886), that a district court could not entertain a petition for limitation of liability unless it also had admiralty jurisdiction over the claims against the vessel owner. *See id.* at 619 ("[A]s the owners of the burned property could not sue originally in the admiralty for their damages, it is impossible to see how, by the present form of the proceeding, the owner of the steamer can give to the admiralty court jurisdiction to entertain the suits for the damage by a practical removal of them into the admiralty court . . . .").

Fifteen years after *Ex parte Phenix*, however, the Supreme Court changed course. In *Richardson*, a barge proceeding up the Maumee River in Ohio – a navigable waterway – collided with a railway bridge. 222 U.S. at 99-100. The owner of the barge filed a petition in the United States District Court for the District of Ohio seeking to limit his liability for the damage to the railway bridge. *See id.* at 100. The district court dismissed the case for lack of admiralty jurisdiction – perhaps relying on *Ex parte Phenix* – but the Supreme Court reversed in an opaquely reasoned decision. *See id.* at 96, 107. The Court noted that a collision between a ship on navigable waters and a structure on land was not a maritime tort, but held: "If . . . the owner's liability for a tort permitted or incurred through the master or crew, although nonmaritime, because due to a collision between the ship and a structure upon land, be one in respect to which his liability is limited, and he applies for the benefit of such limitation to the proper district court of the United States, 'all proceedings . . . against the owner, shall cease.'" *Id.* at 101, 106.

Following *Richardson*, the Second Circuit held that the Limitation Act conferred admiralty jurisdiction over petitions seeking limitation of liability based on collisions between ships on navigable waters and structures on land. In *The No. 6*, 241 F. at 69, a dredge "engaged in improving the navigation of the Harlem River" damaged gas pipes beneath the river bottom. *Id.* at 69. The United States District Court for the Southern District of New York took

jurisdiction over the dredge owner's petition for limitation of liability, and concluded that the vessel owner had not been negligent and thus was shielded from liability. *Id.* at 71. The Second Circuit affirmed, reasoning that the district court must have had admiralty jurisdiction because the petition was filed "in strict conformity with" *Richardson*. *Id.*[6]

*Richardson* and *The No. 6* did not reach the precise circumstances presented here – nor could they have. One of the fundamental principles of our judicial system is that courts are authorized to decide only those cases and controversies that are actually before them. *See* U.S. Const. Art. III § 2; *Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587, 597-98 (2007) (plurality opinion) ("Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies[]' . . . ."). The controversy before the Supreme Court in *Richardson* involved a tort "due to a collision between a ship and a structure upon land." 222 U.S. at 101. The controversy before the Second Circuit in *The No. 6* involved virtually identical facts: a collision between a vessel on navigable waters and an underground structure. *See* 241 F. at 69. Thus, although it is *possible* to read *Richardson* and *The No. 6* for the broader proposition, that is not the appropriate way to read either case.

Furthermore, the reasoning of *Richardson* and *The No. 6* does not indicate that either the Supreme Court or the Second Circuit intended its decision to be read broadly. The *Richardson* Court reasoned only that the Limitation Act conferred jurisdiction over a petition involving a collision between a vessel on navigable waters and a land structures. *See* 222 U.S. at 101; *see also David Wright Charter Serv. of N. Carolina, Inc. v. Wright*, 925 F.2d 783, 785 (4th Cir. 1991) ("*Richardson* . . . [does not] purport[] to provide admiralty jurisdiction for torts involving vessels

---

[6] The Second Circuit has never cited or otherwise relied upon *The No. 6* in any subsequent case. No district court within this Circuit has cited *The No. 6* for the proposition that the Limitation Act independently confers admiralty jurisdiction on federal courts since 1927. *In re Highland Navigation Corp.*, 24 F.2d 582, 585 (S.D.N.Y. 1927).

11

that are *not* on navigable waters." (emphasis added)). *The No. 6* court reasoned only that the Limitation Act conferred jurisdiction over petitions filed in "*strict conformity*" with *Richardson*. 241 F. at 71 (emphasis added). Thus, while this Court must heed judicial dictum from the Second Circuit and from the Supreme Court, *see United States v. Bell*, 524 F.3d 202, 206 (2d Cir. 1975) (discussing the difference between judicial dictum and obiter dictum), there is nothing in *Richardson* or *The No. 6* that was clearly intended to guide lower courts under the rather different circumstances presented here – a boat fire occurring entirely on land. *See, e.g.*, *Velasquez v. Legal Services Corp.*, 349 F. Supp. 2d 566, 600 (E.D.N.Y. 2004).

The only case Mr. Carter has cited to the contrary is *In re Bernstein*, 81 F. Supp. 2d 176 (D. Mass. 1999). In *In re Bernstein*, the court considered whether it had admiralty jurisdiction over a petition for limitation of liability based on a motorboat crash that occurred on non-navigable waters. *See id.* at 179. The court concluded that "it ha[d] no choice but to heed the rule of *stare decisis* and follow *Richardson*." *Id.* at 182. The *In re Bernstein* court overlooked the fact that *Richardson*'s holding was specifically limited to a petition based on a collision between a vessel on navigable waters and an object on land. *In re Bernstein* is also the only decision this Court is aware of that has adopted the broader reading of *Richardson*'s holding. The Court respectfully disagrees with that decision.

### 2.

Neither *Richardson* nor *The No. 6* directly answers the question presented here: whether the Limitation Act confers admiralty jurisdiction over a petition seeking limitation of liability based on an incident that occurred entirely on land. However, the Court's finding that neither *Richardson* nor *The No. 6* directly controls the outcome here is not the end of the Court's inquiry. Whether the Limitation Act independently confers admiralty jurisdiction over petitions such as Mr. Carter's is ultimately a question of statutory interpretation. *See, e.g.*, *Califano v. Sanders*,

430 U.S. 99, 104-05 (1977). The Court now considers that statutory interpretation question as a matter of first impression.

"As with all questions of statutory interpretation, the Court begins with the language of the statute." *Deacon v. Metro-North R.R. Co.*, No. 3:07cv1811 (MRK), 2009 WL 3059128, at *2 (D. Conn. Sept. 22, 2009) (citing *United States v. Lucien*, 347 F.3d 45, 51 (2d Cir. 2003)); *Murphy* ex rel. *Estate of Payne v. United States*, 340 F. Supp. 2d 160, 167 (D. Conn. 2004), *aff'd*, 427 F.3d 158 (2d Cir. 2005). The relevant language here comes from 46 U.S.C. § 30511(a): "The owner of a vessel may bring a civil action in a district court of the United States for limitation of liability under this chapter." *Id.*

Although § 30511(a) surely contemplates some litigation in federal district courts, it does not use the type of language that Congress ordinarily uses when granting subject-matter jurisdiction to federal courts. *Cf. Califano*, 430 U.S. at 104 ("None of the codified statutory sections that constitute § 10 [of the Administrative Procedure Act] is phrased like the usual grant of jurisdiction to proceed in the federal courts."). When Congress grants subject-matter jurisdiction to federal district courts, it ordinarily does so *explicitly* by using the word "jurisdiction." *See, e.g.*, 28 U.S.C. § 1330 ("The district courts *shall have original jurisdiction* without regard to amount in controversy of any nonjury civil action against a foreign state . . . .") (emphasis added); *id.* § 1331 ("The district courts *shall have original jurisdiction* of all civil actions arising under the Constitution, laws, or treaties of the United States.") (emphasis added); *id.* § 1350 ("The district courts *shall have original jurisdiction* of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States.") (emphasis added). Congress presumably knows how to use such unambiguous language when it intends to grant subject-matter jurisdiction to the federal district courts.

The Court also considers the placement of § 30511 within the United States Code to be a

relevant factor. *See Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, ----, 128 S. Ct. 2326, 2339 (2008); *see, e.g.*, *Austen v. Catterton Partners V, LP*, --- F. Supp. ----, No. 3:09cv1257 (MRK), 2010 WL 3023813, at *8 (D. Conn. Aug. 2, 2010). Grants of subject-matter jurisdiction to federal courts are ordinarily codified in Title 28. Section 30511(a) is codified not in Title 28, but rather in Title 46, which for the most part contains substantive admiralty and maritime law provisions. The Court does not suggest that a statutory provision cannot be a grant of subject-matter jurisdiction if it is not codified within Title 28, but whether a particular provision is codified within Title 28 or elsewhere in the Code is surely a relevant consideration.

Next, while this Court is not averse to considering evidence of statutory meaning beyond the text itself, *see, e.g.*, *United States v. Abu-Jihaad*, 600 F. Supp. 2d 362, 396-97 (D. Conn. 2009), the Court is not aware of any legislative history sources that might be helpful here. *See* Medley, *A Sea of Confusion*, 108 Mich. L. Rev. at 234-35 ("The Act passed on the last day of the 1851 legislative session, with no debate in the House and very little debate in the Senate. . . . [T]his dearth of debate means that it is not clear exactly why legislators favored the act . . . ."). Absent such extratextual evidence of congressional intent, and absent any evidence in the text itself that Congress intended the Limitation Act as a limitless conferral of jurisdiction over any and all petitions filed in conformance with the Limitation Act, the Court is reluctant to read § 30511 as an implied grant of jurisdiction over entirely land-based tort cases.

Although this Court must presume that "the ordinary meaning of [statutory] language accurately expresses the legislative purpose," *Gross v. FBL Financial Service, Inc.*, 557 U.S. ----, ----, 129 S. Ct. 2343 (2009), the Court further notes that Mr. Carter's favored reading does not further the purpose of the Limitation Act. The apparent purpose of the Limitation Act is to encourage commercial maritime activities on the waters of the United States. *See Seven Resorts, Inc. v. Cantlen*, 57 F.3d 771, 773 (9th Cir. 1995). The Supreme Court's reading of the Limitation

Act as a grant of admiralty jurisdiction in *Richardson* furthered that purpose, but Congress undermined the *Richardson* Court's rationale for reading the Limitation Act as a jurisdictional provision when it passed the Admiralty Extension Act of 1948 ("Extension Act"), Pub. L. No. 80-695, 62 Stat. 496 (1948) (codified as amended at 46 U.S.C. § 30101(a)). The Extension Act provides: "The admiralty and maritime jurisdiction of the United States extends to and includes cases of injury or damage, to person or property, caused by a vessel on navigable waters, *even though the injury or damage is done or consummated on land*." 46 U.S.C. § 30101(a) (emphasis added). Under the Extension Act, the torts at issue in *Richardson* and *The No. 6* would now be considered maritime torts that fall within the scope of the federal courts' admiralty jurisdiction under 28 U.S.C. § 1333(1). As the Ninth Circuit reasoned in *Seven Resorts*, any "[f]urther extension of the [Limitation] Act to encompass torts occurring on non-navigable waters with no relation to commercial shipping would do little to further the [Limitation] Act's purpose . . . ." 57 F.3d at 773.

Although neither party has argued the point, the Court is also concerned that reading the Limitation Act in the manner favored by Mr. Carter could raise a constitutional difficulty. *See, e.g.*, *Skilling v. United States*, 130 S. Ct. 2896, 2929-30 (2010) (quoting *Boos v. Berry*, 485 U.S. 312, 331 (1988). As the Fifth Circuit pointed out in *Guillory*, 956 F.2d at 114, the federal courts' admiralty jurisdiction comes both from a statute, *see* 28 U.S.C. § 1333(1), and from the Constitution. *See* U.S. Const. art. III § 2. The constitutional grant of admiralty jurisdiction might well be broader than the congressional grant of admiralty jurisdiction embodied in § 1333(1). But a statutory grant of admiralty jurisdiction as broad as the one Mr. Carter argues the Limitation Act represents – one that extended federal admiralty jurisdiction to reach any tort involving a boat, whether it occurred on navigable waters or not – might well exceed the scope of the constitutional grant of admiralty jurisdiction. In contrast, the narrower interpretation of

the Liability Act that the Supreme Court adopted in *Richardson* and that the Second Circuit followed in *The No. 6* – both of which involved torts that occurred on navigable waters and had significant connections to commercial maritime activities – raised no such constitutional difficulty.

The Court notes in closing that the decision it reaches here is consistent with numerous decisions by other courts. Every Court of Appeals that has considered the issue presented here has reached the identical result. In *In re Sisson*, 867 F.2d 341 (7th Cir. 1989), *rev'd on other grounds sub nom. Sisson v. Ruby*, 497 U.S. at 358, the Seventh Circuit reasoned that the Limitation Act does not confer admiralty jurisdiction any farther than the Extension Act does. *See id.* at 349-50. At least five other Courts of Appeals have followed the Seventh Circuit in so holding. *See Seven Resorts*, 57 F.3d at 772-73; *Guillory*, 956 F.2d at 115; *David Wright*, 925 F.2d at 785; *Three Buoys Houseboat Vacations U.S.A. Ltd. v. Morts*, 921 F.2d 775, 780 (8th Cir. 1990); *Lewis Charters*, 871 F.2d at 1054. The Court finds those decisions to be persuasive, particularly in light of the fact that there are no Court of Appeals decisions to the contrary, and in light of the fact that every district court within this Circuit that has considered the same issue has reached the same conclusion. *See Johnson v. Anderson*, No. 3:06cv782 (WEE), 2007 WL 735777, at *3-4 (D. Conn. Mar. 2, 2007) (recommended ruling of Fitzsimmons, M.J.) ("This Court follows the Fourth, Fifth, Seventh, Eighth, Ninth and Eleventh Circuits, in finding that the Limitation Act does not provide an independent basis for admiralty jurisdiction in this case."); *Complaint of Dickenson*, 780 F. Supp. 974, 975-76 (E.D.N.Y. 1992) (Wexler, J.) ("[A]lthough the Supreme Court recently left open the question of whether the Limitation of Liability Act provides an independent source of admiralty jurisdiction, the Fourth, Seventh, Eighth and Eleventh Circuits, have all held that it does not." (citation omitted)).

## IV.

In sum, the Court concludes that it does not have jurisdiction over this action because the Limitation Act does not confer admiralty jurisdiction over petitions seeking limitation of liability based on incidents that occurred entirely on land. Allstate's Motion to Dismiss for Lack of Subject Matter Jurisdiction [doc. # 20] and Continental's Motion to Dismiss Because of Lack of Admiralty Jurisdiction [doc. # 21] are therefore both GRANTED. **The Clerk is directed to dismiss this action and close the file.**

IT IS SO ORDERED.


/s/            Mark R. Kravitz            
United States District Judge


Dated at New Haven, Connecticut: **September 30, 2010.**